UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RICHARD BRANT KNIGHT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-825** |
| **SOCIAL SECURITY ADMINISTRATION** | **SECTION "I" (3)** |

REPORT AND RECOMMENDATION

Plaintiff, Richard Brant Knight ("Plaintiff" or "Mr. Knight"), filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying his claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). 42 U.S.C. 423(d)(II)(A). The matter has been fully briefed on cross-motions for summary judgment. (Rec. Doc. Nos. 15 & 17). The issues are thus ripe for review. For the following reasons, IT IS RECOMMENDED that Plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, the Commissioner's decision affirmed, and the Plaintiff's Complaint be DISMISSED.

I.     **BACKGROUND**

Plaintiff filed his application for DIB on June 11, 2016, alleging disability due to back injury, neck injury, and depression with an onset date of November 3, 2015. (Adm. Rec. at 97). Plaintiff was insured for disability insurance benefits through December 31, 2015. (*Id.*).

Defendant, the Social Security Administration ("Defendant" or "SSA") denied Plaintiff's application on October 24, 2016. (*Id.* at 108). Plaintiff subsequently requested an administrative hearing, which was held on March 19, 2018. (*Id.* at 15-56). Plaintiff and a vocational expert ("VE"), Kasey Suggs Crawford, testified at the hearing. (*Id.*)

On May 31, 2018, the administrative law judge ("ALJ") issued a decision that concluded that Plaintiff was not disabled during the relevant time period under sections 216(i) and 223(d) of

the Act. (*Id*. at 109-25). In the decision, the ALJ concluded that Plaintiff had the severe impairments of degenerative disc disease of the cervical and lumbar portions of the spine, status post cervical fusion in December 2012, and status post lumbar fusion in November 2015. (*Id*. at 114). The ALJ ultimately held, however, that Plaintiff did not have an impairment and combination of impairments that met or medically equaled the severity of one of the listed impairments under the regulations. (*Id*. at 116). The ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), except that Plaintiff could not climb ladders, ropes, or scaffolds, and that Plaintiff could occasionally climb ramps and stairs. (*Id*.). The ALJ also concluded that Plaintiff had acquired work skills from past relevant work that were transferrable to other occupations with jobs existing in significant number in the national economy. (*Id*. at 123). Ultimately, the ALJ concluded that a finding of "not disabled" was appropriate, and the Plaintiff was not under disability as defined in the Act, at any time from November 3, 2015, the alleged date of onset, through December 31, 2015, the date last insured. (*Id*. at 124).

On December 13, 2018, the Appeals Council vacated the ALJ's May 31, 2018 decision and remanded the case for the ALJ to further evaluate Plaintiff's ability to perform past relevant work at step four of the sequential evaluation process pursuant to 20 C.F.R. § 404.1565 and consider whether Plaintiff performed his past relevant work long enough to learn it at a level of substantial gainful activity and within the relevant fifteen year period. (*Id*. at 131). The Appeals Council asked the ALJ the make the appropriate finding, in accordance with the regulations, regarding the specific mental demands of the past relevant work for comparison with Plaintiff's residual functional capacity. (*Id*. at 131-32). If the Plaintiff was unable to perform past relevant work, the Appeals Council ordered the ALJ to proceed to step five of the sequential evaluation. (*Id*. at 132).

On June 3, 2019, Plaintiff and VE, Karen Harrison, testified at a second hearing before the ALJ. (*Id*. at 58-96). On June 27, 2019, the ALJ issued a decision finding that Plaintiff was not disabled during the relevant time period under sections 216(i) and 223(d) of the Act. (*Id*. at 152). The findings of fact and conclusions of law by the ALJ were similar to those in the May 31, 2018 ruling. The ALJ again found that the Plaintiff had the residual functional capacity to perform light work as defined by 20 C.F.R. § 404.1567(b) except no climbing ladders, ropes, or scaffolds and occasional climbing of ramps and stairs. (*Id*. at 144). Further, the ALJ concluded that the Plaintiff could perform past relevant work as a retail store manager, as it was actually performed. (*Id*. at 151). The ALJ found that work as a retail store manager did not require the performance of work-related activities precluded by Plaintiff's residual function capacity. (*Id*.).

Plaintiff requested review of the ALJ's June 27, 2019, decision. On January 14, 2020, the Appeals Council denied Plaintiff's request, stating that it considered Plaintiff's reasons for disagreement with the decision and found that those reasons did not provide a basis for changing the ALJ's decision. (*Id*. at 1). Thereafter, Plaintiff filed this civil action.

## II. STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision of the Commissioner. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey,* 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

## III. ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, Plaintiff must show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered disabled only if a physical or mental impairment is so severe that the claimant is unable to do not only previous work, but cannot, considering age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she or he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing

5

> impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 238 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999)). If the ALJ determines that a plaintiff is not disabled under step five of the test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step five also requires the Commissioner to use the medical-vocational guidelines to make a disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id*.

## IV. ISSUES ON APPEAL

There are three issues on appeal:

(1) Whether the ALJ properly identified Plaintiff's past relevant occupation as a retail store manager rather than a gas station/convenience store owner, and whether the Plaintiff could perform his past relevant work as actually performed.

(2) Whether the ALJ properly found that Plaintiff has no medically determinable mental impairments.

(3) Whether the ALJ erred in failing to give deference to and develop the record as to the opinion of a treating physician.

## V. ANALYSIS

1. Whether the ALJ properly identified Plaintiff's past relevant occupation as a retail store manager rather than a gas station/convenience store owner, and whether the Plaintiff could perform his past relevant work as actually performed.

Plaintiff argues that the ALJ's finding that he could perform his past relevant work as a retail store manager as it was actually performed was incorrect because there was no evidence to support such a finding. Plaintiff argues that the ALJ erred in finding that one of his past occupations was a "retail store manager." Plaintiff points to the VE's testimony from the March 19, 2018 hearing where the VE found that Plaintiff's past relevant work was more closely aligned with the occupation of a gas station/convenience store owner. Plaintiff also argues that, at the first hearing, the ALJ agreed with the vocational expert. Further, Plaintiff asserts that the ALJ acknowledged that the Plaintiff was an "owner/operator of a country gas station and store" in his June 2019 decision. Plaintiff argues that the difference in the ALJ's findings are significant because the Dictionary of Occupational Titles ("DOT") defines retain store manager as an occupation performed at a light exertional level while defining gas station/convenience store owner as an occupation performed at a medium exertion level.

This Court finds that there was substantial evidence to support the ALJ's finding that Mr. Knight's past relevant work was a retail store manager. Plaintiff's argument fails to consider the testimony of the VE who testified at June 3, 2019 hearing and primarily focuses on the testimony of the VE who testified at the March 19, 2018 hearing. At the June 3, 2019 hearing, Mr. Knight testified that he and his wife owned a small country store where they sold gas, bread, milk, cokes, cigarettes, and other staple items (Adm. Rec. at 69). The country store did not perform automotive repairs or oil changes. (*Id*. at 70, 72). Mr. Knight stated that his wife handled the books for the store, and his duties included sweeping and mopping. (*Id*. at 68-69). He also testified that he would

7

spend two or three hours once a week unloading a truck, stocking shelves, and filling the coke machine. (*Id*. at 85-86). Mr. Knight testified that the majority of his time was spent at the counter checking out customers. (*Id*. at 85). After confirming that she reviewed Mr. Knight's file, the VE testified that Mr. Knight was a "country store owner, which is a retail store manager…." (*Id*. at 74). The record is clear that the VE characterized Mr. Knight's past relevant work as being that of a retail store manager. The ALJ is entitled to rely on the VE to supply information about a claimant's past work. *Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003) (citing *Shave v. Apfel,* 238 F.3d 592, 594 (5th Cir.2001); *Leggett v. Chater,* 67 F.3d 558, 563–64 (5th Cir.1995) (condoning the use of a VE to supply information about the claimant's past work)). Therefore, the Court finds that there was substantial evidence for the ALJ's finding that Mr. Knight was a retail store manager.

Plaintiff also argues that the ALJ erred in finding that he could perform his past relevant work as actually performed. Plaintiff points out that the ALJ found that he was limited to light work. (Rec. Doc. No. 15-1 at p. 4). Citing 20 C.F.R. § 404.1567(b), Plaintiff asserts that light work requires lifting up to 20 pounds occasionally and 10 pounds frequently. (*Id*.). Plaintiff also points to his Form SSA-3369-BK Work History Report wherein he reported that he was a country store owner, and the heaviest weight he lifted was fifty pounds, and the weight he frequently lifted was twenty-five pounds. (Adm. Rec. at 326). Plaintiff also asserts that the VE testified that a job that requires lifting up to fifty points was medium work, which is consistent with the definition of medium work in 20 C.F.R. § 404.1567(c). (Rec. Doc. No. 15-1 at p. 4). Therefore, Plaintiff argues that the vocational evidence shows that his past relevant work was a gas/station convenience store owner and that the work was "actually performed" at the medium exertional level. (*Id*.).

8

The Plaintiff's argument is unsupported by the record. First, as previously discussed, the VE at the June 3, 2019 hearing characterized Mr. Knight's past relevant work as a retail store manager. (Adm. Rec. at 74). Second, the VE at the June 3, 2019 hearing did not state that Mr. Knight's work was "actually performed" at a medium exertional level. The VE stated that if Mr. Knight had to lift up to fifty pounds, that would be a medium exertional level. (*Id*. at 95). When combined, these statements do not stand for the proposition that Mr. Knight's past relevant work was a gas station/convenience store owner, which he actually performed at a medium level.

Furthermore, the Court disagrees with Plaintiff's argument that the ALJ erred in finding that he could perform his past relevant work as actually performed. Plaintiff's argument focuses on the day-to-day responsibilities and duties that he performed while working at his country store; however, a claimant's particular duties and responsibilities are not the only factors considered when an ALJ determines how a claimant's job was actually performed. "The mere inability of a claimant to perform certain 'requirements of his past job does not mean that he is unable to perform 'past relevant work' as that phrase is used in the regulations'; rather, the Commissioner may also consider the description of the claimant's past work as such work is generally performed in the national economy." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Hence, the ALJ may also consider how Plaintiff's work as a retail store manager was generally performed in the national economy.

The Court finds there was substantial evidence to support the ALJ's ruling that Plaintiff could perform his job as a retail store manager as actually performed. As previously stated, Mr. Knight testified that his duties included sweeping, mopping, unloading a truck for two or three hours once a week, stocking shelves, and filling the coke machine. (Adm. Rec. at 68-69, 85-86).

Mr. Knight also testified that most of his time was spent checking out customers. (*Id*. at 85). The VE characterized Mr. Knight's work as a retail store manager with a light exertional level and specific vocational preparation rating of 7, and the ALJ found that Plaintiff's past relevant work was a retail store manager. (*Id*. at 77; 151). The VE testified that generally a manager in the DOT would assign the duties that Mr. Knight described – sweeping, mopping, and cleaning bathrooms – to someone else, like a subordinate. (*Id*. at 81-82). When discussing the duty of a manager to unload trucks, the VE stated, "in theory a manager can assign someone else to do the job." (*Id*. at 81). The VE also compared Mr. Knight's duties to the duties of other occupations in the DOT. (*Id*. at 83). The VE discussed a salesclerk position, which included duties such as stocking, cleaning, and mopping and stated that Mr. Knight's job could also be characterized as salesclerk position, which is also a light job. (*Id*. at 83, 88). The VE stated that there are certain items in any store that would be over 20 pounds, but, according to the DOT, the job would still be considered a light job. (*Id*.). Therefore, the Court finds that there was substantial evidence to support the ALJ's finding that Mr. Knight could perform the occupation of retail store manager as actually performed.

2. Whether the ALJ properly found that Plaintiff has no medically determinable mental impairments.

The Plaintiff argues that the ALJ erred when in not finding a medically determinable mental impairment. Citing 20 C.F.R. § 404.1520a, the Plaintiff asserts that if the ALJ finds that a claimant has a medically determinable mental impairment, an ALJ must assess the claimant's mental impairments pursuant to the psychiatric review technique (PRT). Plaintiff asserts that Joseph Kahler, Ph. D, a state agency psychologist, found that Plaintiff had a "medically determinable" affective disorder. (Adm. Rec. at 102). Plaintiff next points out that that ALJ stated

10

that he gave Dr. Khaler's opinion "great weight." (*Id*. at 150). Plaintiff argues that if the ALJ gave Dr. Khaler's opinion great weight, then his duty to perform the PRT was triggered.

The Court finds that there was substantial evidence upon which the ALJ could determine that Mr. Knight had no medically determinable mental impairment on or before the date last insured. In his opinion, the ALJ acknowledged that Mr. Knight's alleged disability was due to psychiatric problems, such as anxiety and post-traumatic stress, and stated that Mr. Knight's progress notes from the Veterans Administration Hospital ("VA") did not show a diagnosis for any psychiatric diagnoses on or before his date last insured. (Adm. Rec. at 142). Indeed, the records from the VA, which span from September 8, 2014 through July 6, 2015, indicate no psychiatric diagnoses, such as post-traumatic stress or otherwise. (*Id*. at 649-56). The records further indicate that the first diagnoses of depression or post-traumatic stress disorder occurred in or after August 2016. (*Id*. at 888-89; 903). The VA records also show that Mr. Knight's first positive PTSD and depression screening occurred in March of 2017 (*Id.* at. 870 – 871). The Court further notes that there was a provisional diagnosis of PTSD/Depression in March 2017, where the VA notes that "Depression and PTSD, wants therapy and psychiatric." (Adm. Rec. 793). As to Dr. Kahler's opinion, the PRT form submitted by Dr. Kahler stated that Mr. Knight's affective disorder was a "medically determinable impairment." However, Dr. Khaler also stated that Mr. Knight's Affective Disorders were "[n]on severe," and that he had no restriction of activities of daily living, no difficulties maintaining social functioning, no difficulties maintaining concentration, persistence or pace, and no repeated episode of decompensation, each of extended duration. (Adm. Rec. at 101-02). When providing additional explanation for the PRT, Dr. Khaler opined that "there is no evidence of significant work-related mental limitation prior to the [date of the last insured]."

11

(Adm. Rec. at 102). Thus, when considering Mr. Knight's VA records and the opinion of Dr. Khaler, the Court finds there was substantial evidence support the ALJ's finding that Mr. Knight did not have any "medically determinable" mental impairment on or before his December 31, 2015, date last insured.

3. Whether the ALJ erred in failing to give deference to and develop the record as to the opinion of a treating physician.

Plaintiff contends that the ALJ erred in failing to give deference to the opinions of a treating physician. Specifically, the Plaintiff points to Dr. Mark James' January 2018 and April 2019 opinions wherein he stated that Plaintiff could perform less than sedentary work on a very limited basis. (Adm. Rec. 968-69). The ALJ stated that "full consideration" was given to Dr. James' January 2018 and April 2019 medical source statements. (*Id*. at 149). However, the ALJ found "there is simply nothing in the record to support such extreme functional limitations existing for a period of at least 12 consecutive months, beginning on or before December 31, 2015, and continuing into the present." (*Id*.) The ALJ further stated no weight was given to Dr. James' 2018 and 2019 opinions because they were not shown or alleged to relate back to on or before the December 31, 2015 date last insured. (*Id*. at 150). Plaintiff argues that the ALJ's statement that Dr. James' opinions do not relate back to on or before the date last insured ignores the ALJ's own acknowledgement of Dr. James' June 2016 statement encouraging Plaintiff to apply for disability. Plaintiff further argues that the ALJ's finding that Dr. James's opinion does not relate back ignores that Dr. James stated that he treated Plaintiff for his neck and back for 5 years as of 2018 and 10 years as of 2019. Plaintiff argues that the ALJ's conclusion that the Dr. James' opinions were not relevant to the time period at issue is unsupported, and the ALJ's failure to give Dr. James' opinion any deference requires remand.

12

Plaintiff also points to the ALJ's emphasis on his attempt to return to work as a carpenter after his November 2016 back surgery. Plaintiff asserts that he testified that he was only able to return to work on a part-time basis for a short period of time. Plaintiff contends that his attempt to return to work that he was unable to perform does not undermine Dr. James' assertions in 2016, 2018, or 2019 that Mr. Knight was unable to work. Plaintiff also argues that the ALJ incorrectly found that the evaluation of Dr. Sebastian F. Koga was inconsistent with Dr. James opinions. The Plaintiff points out that Dr. Koga (1) found him to have an Oswestry disability index score of 38%, (2) described decreased cervical and lumber range of motion, and (3) described abnormal MRI findings in his cervical and lumbar spine. (Adm. Rec. 965-66). Plaintiff argues that the ALJ either misinterpreted or ignored Dr. Koga's diagnostic findings. Plaintiff further argues that if the ALJ had any questions regarding the findings supporting Dr. James' opinions or regarding the time period considered by Dr. James, then the ALJ had an obligation to contact Dr. James to clarify and develop the record.

When making a disability determination, the ALJ considers the medical opinions in the record in conjunction with other relevant evidence received. 20 C.F.R. § 404.1527(b). When determining the amount of weight to give a medical opinion, the ALJ evaluates the medical opinion by considering factors such as: (1) the examining relationship, (2) the treatment relationship, (3) supportability, (4) consistency, (5) specialization, or other factors which tend to support or contradict the medical opinion. 20 C.F.R. § 404.1527(c)(1)-(6). Generally, the ALJ will afford more weight to medical opinions from a treating source. 20 C.F.R. § 404.1527(c)(2). A treating sources medical opinion will be afforded controlling weight if the ALJ finds that the opinion of

13

the treating source on the nature and severity of the impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id*. In the event that the opinion of the treating source is not afforded controlling weight, the ALJ will determine the appropriate weight to afford the opinion by considering: (1) the length of the treatment and the frequency of examination, (2) the nature and extent of the treating relationship, as well as the factors listed in 20 C.F.R. § 404.1527(c)(3)-(6). *Id*.

"[O]rdinarily, the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir.1994) (quoting *Scott v. Heckler,* 770 F.2d 482, 485 (5th Cir.1985)). But the treating physician's opinions are not conclusive. *Id.* "[W]hen good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony." *Id.* Recognized "good cause" exceptions include "disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques*,* or otherwise unsupported by the evidence." *Id.* (citing *Scott,* 770 F.2d at 485). Upon review of the record, the Court finds that the January 2018 and April 2019 opinions of Dr. James were otherwise unsupported by other substantial evidence in the record such that there was good cause to give no weight to the opinions.

In the January 2018 Spine Medical Source Statement form, Dr. James states that he treated Mr. Knight for neck and back pain every three to four months for five years. (Adm. Rec. 968). Dr. James indicated that Mr. Knight's symptoms/pain were severe enough to constantly interfere with concentration and attention. (*Id*.). He also indicated that Mr. Knight would likely be absent from

14

work for four or more days per month because of his impairment. (*Id*.). He indicated that Mr. Knight could not walk one full city block without rest or severe pain, he could stand for fifteen minutes at a time, sit for thirty minutes at a time, work for two hours per day, occasionally lift ten pounds, and that he could not lift any weight on a frequent basis. (*Id*. at 969). Dr. James further indicated that Mr. Knight could occasionally bend, stoop, rotate his neck, look up or down, head support, and need to recline. (*Id*.). Dr. James opined that in an eight hour day, Mr. Knight would need to take scheduled sitting or standing breaks every thirty minutes for five minutes at a time. (*Id*.). He also opined that Mr. Knight would need a job that will permit shifting from sitting/standing at will. (*Id*.).

In the April 2019 Spine Medical Source Statement, Dr. James stated that he treated Mr. Knight for neck and back pain every four to six months for ten years. (*Id*. at 1088). Dr. James indicated that during an eight-hour day, Mr. Knight's pain or other symptoms would cause him to be off-task or unable to maintain attention or concentration for twenty-five percent of the day or greater. (*Id*.). Dr. James once again indicated that Mr. Knight would likely be absent from work for four or more days per month because of his impairment. (*Id*.). He reiterated that Mr. Knight could walk only one full city block without rest or severe pain, he could stand for thirty minutes at a time, stand/walk and sit for less than two hours in an eight-hour day, work for two hours per day, occasionally lift five pounds, and that he could not lift any weight on a frequent basis. (*Id*.). Dr. James also reasserted his opinion that Mr. Knight could occasionally bend, look up or down, and need to recline. (*Id*.). However, Dr. James indicated that Mr. Knight could never stoop or rotate his neck. (*Id*.). Dr. James opined Mr. Knight's cervical radiculopathy limited his ability to reach, handle, or finger. (*Id*. at 1089). Dr. James indicated that Mr. Knight would need to take scheduled

15

sitting or resting breaks every hour for fifteen minutes at a time. (*Id*.). He also opined that Mr. Knight would need a job that will permit shifting from sitting/standing at will. (*Id*.). Dr. James also stated that Mr. Knight's condition would interfere with his ability to perform work for an eight-hour day "due to pain, stiffness, and cervical and lumbar ROM." (*Id*.).

As an initial matter, the Court notes that the relevant time period for Plaintiff's disability determination was his alleged initial onset date of November 3, 2015, through his date last insured, December 31, 2015. (Adm. Rec. 97).

> Thus, to prove that [he] is entitled to disability benefits, plaintiff must not only prove that [he] is disabled, but that [he] became disabled prior to the expiration of [his] insured status. Evidence showing a degeneration of a claimant's condition after the expiration of his Title II insured status is not relevant to the Commissioner's Title II disability analysis. A claimant who becomes disabled after the expiration of [his] insured status is not entitled to DIB.

*Thompson v. Astrue*, No. CIV.A. 10-182, 2010 WL 5651401, at *10 (E.D. La. Dec. 22, 2010), *report and recommendation adopted,* No. CIV.A. 10-182, 2011 WL 291305 (E.D. La. Jan. 24, 2011) (quotation and citations omitted). Medical evidence that is dated after the date last insured is relevant only to the extent that it might establish that the claimant was disabled as of the date last insured. *Id*.

Both of Dr. James' Spine Medical Source Statement forms are dated after the December 31, 2015, date last insured. Therefore, these records are only relevant to the extent that they establish that Mr. Knight was disabled as of December 31, 2015. The Court finds that there was substantial evidence for the ALJ to conclude that the January 2018 and April 2019 Spine Medical Source Statement forms do not establish that Mr. Knight was disabled as of December 31, 2015. Nothing in the forms indicate that the Plaintiff was at the level of impairment indicated in the forms on or before December 31, 2015. The inconsistent identification of the periods that Dr.

James states that he treated Mr. Knight – every three to four months for 5 years since 2018 versus every four to six months for ten years since 2019 – do not suggest that Mr. Knight was disabled in any way on or before December 31, 2015. Those dates merely establish the timeframe that Dr. James cared for Mr. Knight. Therefore, the Court finds there was substantial evidence to support the ALJ's Decision to give no weight to Dr. James' Medical Source Statements.

Notwithstanding the lack of evidence in the Medical Source Statement forms that Mr. Knight was disabled on or before December 31, 2015, the Court finds that there was substantial evidence to support the ALJ's decision to reject the opinions of Dr. Mark James. On November 3, 2015, Dr. Samer Shamieh, performed lumbar surgery on Mr. Knight. (Adm. Rec. 593). On December 3, 2015, Mr. Knight had a post-operative follow-up visit with Dr. Shamieh where Mr. Knight reported almost complete relief of leg pain with only mild low back and abdominal pain. (*Id.* at 598). Mr. Knight had full range of motion in his cervical spine, decreased range of motion in his lumbar spine, and 5/5 muscle strength in all major muscle groups in his lower extremities. (*Id.*). On January 7, 2016 – after the date last insured – Mr. Knight was examined by Dr. Christopher Foret for his Commercial Driver's License Exam. (*Id.* at 487). Upon physical examination, Dr. Foret noted that Mr. Knight had a normal range of motion and cleared Mr. Knight for two years. (*Id.* at 488). On February 11, 2016 Mr. Knight returned to Dr. Shamieh where Mr. Knight reported "complete relief of leg pain" and mild axial back pain that continued to improve the further he got from the surgical date. (*Id.* at 601). Mr. Knight also reported that "he has continually increased his activity and believes he is ready to return to work at this time." (*Id.*). Furthermore, the physical exam on that date revealed improving range of motion, and Mr. Knight also indicated that he was no longer using a back brace. (*Id.*). On May 17, 2016, Mr. Knight

17

returned to Dr. Shamieh and reported "complete relief of leg pain" with only mild axial low back pain that was continuing to improve. (*Id*. at 604). Mr. Knight also reported that he had returned to work as a carpenter and was setting his pace to avoid overexertion. (*Id*.). Mr. Knight stated that he was experiencing intermittent symptoms since starting work. (*Id*.).

It was not until June 15, 2016, when Mr. Knight was examined by Dr. James, that disability was mentioned. (*Id*. at. 495). At the June 2016 visit, Mr. Knight reported neck pain, back pain, and neck stiffness. (*Id*. at 493). Upon physical examination, Dr. James reported back spasms and normal range of motion and tenderness in Mr. Knight's neck. (*Id*. at 494). From this physical examination, Dr. James reported that Mr. Knight was "[h]aving great difficulty with neck and back after return to work," and he "[l]ikely will need to apply for disability." (*Id*. at 495). Furthermore, on December 7, 2016, Mr. Knight was examined by Jessica M. Rachal, NP.  (*Id*. at 960). On December 19, 2016, Dr. Sebastian F. Koga cosigned Ms. Rachal's progress notes from the December 7, 2016 examination. (*Id*.). Mr. Knight reported back pain, neck pain, neck stiffness, gait problems, weakness, and numbness. (*Id.* at 961). Furthermore, upon physical examination, the nurse practitioner noted pain and decreased range of motion in Mr. Knight's back and decreased range of motion in his neck. (*Id.* at 965). However, during Mr. Knight's neurologic exam his strength was rated a 5/5 throughout, and his gait, reflexes, and coordination were normal. (*Id.* at 963-65).

Mr. Knight's records show that he immediately improved after his lumbar surgery on November 3, 2015. Thereafter, Mr. Knight showed continued improvement through the date insured and even showed improvement months after the date insured. It was in June 2016 – more than six months after the date last insured and after Mr. Knight had returned to work – that it was

suggested that Mr. Knight may need to apply for disability. Although Dr. James suggested that Mr. Knight should apply for disability, the ALJ was justified in disregarding or giving little to no consideration to this statement. 20 C.F.R. § 404.1527(d)(1) provides that an opinion from a medical source that an applicant is disabled does not necessarily establish that an applicant is disabled. 20 C.F.R. § 404.1527(d)(1). The final disability determination is reserved for the ALJ. *Id*. Therefore, after reviewing the records from Dr. Shamieh, Dr. Foret, and Jessica M. Rachal, NP, the Court finds that substantial evidence supported the decision of the ALJ to reject the opinions of Dr. James.

Furthermore, the Court finds that the ALJ was not obligated to contact Dr. James to clarify and develop the record. "[I]f the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, ***absent other medical opinion evidence based on personal examination or treatment of the claimant***, the ALJ must seek clarification or additional evidence from the treating physician…". *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) (emphasis added); *See also Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) ("Evidence from other treating sources can suffice to allow the ALJ to determine whether the claimant is disabled. The ALJ is required to request more documentation only where there is no relevant evidence from other treating sources.").

As outlined above, Mr. Knight was personally examined by two physicians other than Dr. James and a nurse practitioner whose notes were cosigned by a physician. From those examinations, it is clear that there were other medical opinions based on personal examination of Mr. Knight that the ALJ used to reach his disability determination. Therefore, there was no duty to seek clarification or additional evidence from Dr. James.

## VI. RECOMMENDATION

It is the recommendation of the undersigned Magistrate Judge that the final decision of the Commissioner of Social Security denying the claim of Richard Brant Knight for disability insurance benefits (DIB) be AFFIRMED, and this action be DISMISSED WITH PREJUDICE.

## OBJECTIONS

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b)A party's failure to object bars that party from: (1) entitlement to de novo review by a district judge; and (2) appellate review of the unobjected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 26th day of May, 2021.

_____
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**